UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re: <br><br> CHRISTOPHER PHILLIPS, <br><br> Debtor. <br> _____ <br><br> STANDARD INSURANCE COMPANY, <br><br> Plaintiff/Appellee, <br><br> v. <br><br> CHRISTOPHER B. PHILLIPS, Debtor, <br><br> Defendant/Appellant, <br><br> and NANCY L. JAMES, solely in her capacity as chapter 7 Trustee for Christopher Phillips, <br><br> Defendant/Appellee. | C09-1399Z <br><br> ORDER |

THIS MATTER comes before the Court on appeal from two separate orders issued by the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court"). The appeals were initially assigned different cause numbers, but they were subsequently consolidated, by stipulation of the parties, into this action. *See* Minute Order at ¶ 1 (docket no. 10) (consolidating Case No. C09-1422Z into Case No. C09-1399Z). Having

ORDER - 1

reviewed the opening, response, and reply briefs, as well as all other materials submitted by the parties, the Court now enters the following Order.

**Background**

In December 2002, Standard Insurance Company ("Standard") issued a disability income insurance policy to debtor Christopher Phillips. Letter Ruling at 2 (Bankr. W.D. Wash. Adv. No. 08-1338 at docket no. 15), Exh. A to Livesey Decl. (W.D. Wash. Adv. No. 08-1232 at docket no. 18), Appellee's Appendix of Record (docket no. 23 at 169) [hereinafter "Letter Ruling"]. In March 2008, debtor submitted a claim for benefits under the disability income insurance policy. *Id.* In July 2008, debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code. *See* Voluntary Petition (Bankr. W.D. Wash. Case No. 08-14147 at docket no. 1), Appellee's Appendix of Record (docket no. 23 at 5-69). In September 2008, Standard initiated an adversary proceeding, seeking to rescind the disability income insurance policy on the basis of fraudulent misrepresentations made by debtor during the application process. *See* Complaint (Bankr. W.D. Wash. Adv. No. 08-1232 at docket no. 1), Appellee's Appendix of Record (docket no. 23 at 140-44). In its Complaint, Standard alleged that debtor falsely and deceptively "assured Standard that he had never applied for or received any other disability insurance benefits" and "represented to Standard that he was not under the care of a physician." *Id.* at ¶¶ 6, 7, 10. Under the policy, debtor would have been entitled to payments of $3,000 per month, beginning in May 2008, until he reached the age of 67, sometime in the year 2039. *Id.* at ¶ 16; *see* Letter Ruling at 2; *see also* Policy Data Sheet, Appellant's Appendix (docket no. 19-2 at 25). Standard sought a declaration that the policy was null and void, and asked that it be rescinded.

While the adversary proceeding was pending, Standard made monthly payments into the bankruptcy estate's account under a reservation of rights. James Decl. at ¶ 7 (Bankr. W.D. Wash. Case No. 08-14147 at docket no. 83), Appellee's Appendix of Record (docket no. 23 at 121). As of July 8, 2009, those payments, plus interest, totaled $52,812.17. *Id.* On

ORDER - 2

September 4, 2009, the Bankruptcy Court approved a settlement between Standard and the Chapter 7 Trustee of debtor's bankruptcy estate (the "Trustee"), pursuant to which the Trustee would retain the $52,812.17 held in the bankruptcy estate's account, and Standard would be released from all claims "related to or arising out of" the disability income insurance policy. *See* Settlement Agreement and Release of All Claims at ¶ 3 & Order Approving Compromise of Claim, attached to Notice of Appeal (Case No. C09-1422Z, docket no. 1-2). The Bankruptcy Court adjudged and declared the policy to be "null, void and of no force and effect, *ab initio*." Order Approving Compromise at ¶ 1. Debtor appeals from this Order.

On the same day it approved the settlement, the Bankruptcy Court also granted partial summary judgment in favor of the Trustee, thereby rejecting debtor's claim of exemption as to the disability income insurance policy proceeds. *See* Order of Partial Summary Judgment Regarding Exemptions, attached to Notice of Appeal (Case No. C09-1399Z, docket no. 1-2). In her motion for partial summary judgment, the Trustee presented two alternative arguments: (i) in light of debtor's failure to disclose the disability income insurance policy in the schedules appended to his Voluntary Petition, and at other times during the bankruptcy proceedings, debtor's claim of exemption was made in bad faith, and (ii) any exemption of disability payments should be limited to the amount reasonably necessary for debtor's support. *See* Trustee's Memorandum (Bankr. W.D. Wash. Adv. No. 08-1232 at docket no. 17), Appellee's Appendix of Record (docket no. 23 at 157-63). In granting the Trustee's motion, the Bankruptcy Court held that "debtor shall have no interest, control or ownership rights" in the disability income insurance policy. Order of Partial Summary Judgment at 2:3-4. Debtor also appeals from this Order.

ORDER - 3

**Discussion**

**A.     Standard of Review**

On appeal, the Bankruptcy Court's conclusions of law and interpretation of the Bankruptcy Code are reviewed de novo, and its factual findings are reviewed for clear error. *Greene v. Savage (In re Greene)*, 583 F.3d 614, 618 (9th Cir. 2009). This Court must accept the Bankruptcy Court's findings of fact unless, upon review, the Court is "left with the definite and firm conviction that a mistake has been committed." *Id.* In evaluating whether the Bankruptcy Court properly granted summary judgment, this Court must apply the familiar standards of Federal Rule of Civil Procedure 56(c), namely whether, viewing the evidence in the light most favorable to the non-movant, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Suncrest Healthcare Ctr. LLC v. Omega Healthcare Investors, Inc. (In re RainTree Healthcare Corp.)*, 431 F.3d 685, 687 (9th Cir. 2005). With respect to the Bankruptcy Court's approval of the compromise between Standard and the Trustee, this Court reviews only for an abuse of discretion. *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1380 (9th Cir. 1986). Deference is owed to the Bankruptcy Court's approval of a settlement because it is "uniquely situated to consider the equities and reasonableness of a particular compromise." *United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

**B.     Approval of Settlement**

Federal Rule of Bankruptcy Procedure 9019 authorizes the Bankruptcy Court, upon motion by the Trustee and after notice and a hearing, to approve a compromise or settlement. "The law favors compromise and not litigation for its own sake," and "as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *A&C Props.*, 784 F.2d at 1381. The relevant factors include: (i) the probability of success in the litigation; (ii) the

ORDER - 4

difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation, and the expense, inconvenience, and delay attending it; and (iv) the interest of the creditors. *Id.* In appealing the Bankruptcy Court's Order Approving Compromise of Claim, debtor does not allege any procedural irregularities or any failure by the Bankruptcy Court to properly assess the fairness, reasonableness, and adequacy of the settlement. Indeed, the Trustee's motion was noted for hearing at least thirty (30) days after filing, and it presented an analysis of the relevant factors, focusing primarily on the low likelihood of success in establishing that Standard was required to pay any disability benefits. *See* Trustee's Notice and Motion for an Order Approving Compromise of Claim (Bankr. W.D. Wash. Case No. 08-14147 at docket no. 82), Appellee's Appendix of Record (docket no. 23 at 103-18).

Instead, debtor contends that the Trustee was not authorized to settle with Standard because the disability income insurance policy was not part of the bankruptcy estate. The parties agree that the Trustee did not timely assume the disability income insurance policy, which was an executory contract, and that the policy was therefore rejected pursuant to 11 U.S.C. § 365(d)(1). The parties diverge, however, on the effect of such rejection. Debtor suggests that the rejection resulted in "the revesting of title back in the debtor." Opening Brief at 18 (docket no. 19). Debtor's position lacks merit.

Rejection of an executory contract "constitutes a breach of such contract." *See* 11 U.S.C. § 365(g). It gives rise to a claim by the non-debtor party to the contract (in this case, Standard), with the date of breach, for purposes of priority, being the date immediately preceding the filing of the bankruptcy petition. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387 (2d Cir. 1997) (citing 11 U.S.C. §§ 365(g) & 502(g)); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 530 (1984). Rejection frees the estate from the obligation to perform (in this case, to pay insurance premiums), but it does not nullify, invalidate, cancel, or rescind the contract, and it does not eliminate any claims or defenses that the debtor had with regard to the contract. *See First Ave. W. Bldg., LLC v. James (In re*

ORDER - 5

*OneCast Media, Inc.)*, 439 F.3d 558, 563 (9th Cir. 2006); *see also* In re Lavigne, 114 F.3d at 387.

Contrary to debtor's contention, rejection does not "revest" the contract in the debtor, and it does not "divest" the estate of the rights that a breaching party has under the applicable state law governing contracts, *see* OneCast, 439 F.3d at 563 (quoting *In re Thompson-Mendez*, 321 B.R. 814, 819 (Bankr. D. Md. 2005)); rather, the rejected executory contract remains property of the estate,[1] but it is unenforceable against the estate. *Alert Holdings, Inc. v. Interstate Protective Servs., Inc. (In re Alert Holdings, Inc.)*, 148 B.R. 194, 203 (Bankr. S.D.N.Y. 1992); *see* In re Thompson-Mendez, 321 B.R. at 820 ("an executory contract or unexpired lease that is rejected under 11 U.S.C. § 365(d)(1) is breached, but is not abandoned" and "the debtor's interest in the [contract or] lease remains property of the estate"); *see also* In re Henderson, 245 B.R. 449, 453-54 (Bankr. S.D.N.Y. 2000) (absent direct or formal abandonment of a residential lease, the lease remains property of the estate even though it was rejected by the trustee).

---

[1] Debtor cites *Cheadle v. Appleatchee Riders Ass'n (In re Lovitt)*, 757 F.2d 1035 (9th Cir. 1985), for the proposition that an executory contract does not become part of the bankruptcy estate until it is assumed by the Trustee. *See id.* at 1041. *Lovitt*, however, involved the former Bankruptcy Act of 1898, rather than the current Bankruptcy Code. *See id.* at 1040 & n.3. Under the previous Act, a trustee was vested with title to property of the estate; under the present Code, the same is not true. *See* Alert Holdings, 148 B.R. at 203 (citing § 70(a) of the Bankruptcy Act & § 541 of the Bankruptcy Code). Moreover, *Lovitt* is inconsistent with Ninth Circuit authority concerning the automatic stay provisions of the now applicable Code. *See Minoco Group of Cos., Ltd. v. First State Underwriters Agency (In re Minoco Group of Cos., Ltd.)*, 799 F.2d 517 (9th Cir. 1986). The filing of a bankruptcy petition operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In *Minoco*, the Ninth Circuit held that liability insurance policies constituted property of the bankruptcy estate as to which the automatic stay barred cancellation by the insurer absent relief from the stay granted pursuant to § 362(d). 799 F.2d at 518-20. Because a Chapter 7 trustee has 60 days to decide whether to accept or reject executory contracts, 11 U.S.C. § 365(d)(1), the conclusion follows that, for the automatic stay provisions of the Code to have meaning with respect to such matters, the executory contracts must be "property of the estate" before the trustee elects to accept or reject them. Finally, both *Lovitt* and *Otto Preminger Films, Ltd. v. Qintex Entm't, Inc. (In re Qintex Entm't, Inc.)*, 950 F.2d 1492 (9th Cir. 1991), which relies on *Lovitt*, are distinguishable because they involved attempted sales by the respective trustees of the unassumed contracts to bona fide purchasers. In those cases, because the trustees did not assume the contracts, the trustees lacked authority to sell or transfer them. In contrast, in this case, the Trustee did not sell or assign the rejected contract to another entity; rather, the Trustee negotiated a settlement with the other party to the contract, which asserted it had no obligation to perform under the contract.

ORDER - 6

Although the adversary proceeding initiated by Standard did not seek to enforce the contract or to obtain the insurance premiums due under the contract, but rather to avoid or rescind the contract, the fact remains that the contract, *i.e.*, the disability income insurance policy, was an asset of the estate as to which the Trustee was a properly named party.  Thus, the Trustee had authority to negotiate a settlement and to seek approval of the compromise by the Bankruptcy Court.  <u>See</u> Fed. R. Bankr. P. 9019(a).  To be clear, the $52,812.17 at issue constitute proceeds of settlement, and not payments made under the rejected disability income insurance policy, and the funds are appropriately treated as part of the bankruptcy estate.  The Trustee's decision to accept the amount in question in lieu of further litigation was reasonable in light of Standard's likelihood of establishing that debtor made material misrepresentations on his application and that, as a result, no disability benefits were owed to debtor.  Thus, the Bankruptcy Court's Order Approving Compromise of Claim was a proper exercise of discretion, and it is hereby AFFIRMED.

**C.     Disallowance of Exemption**

The Bankruptcy Code lists exemptions that a debtor may claim in a bankruptcy proceeding.  <u>See</u> 11 U.S.C. §§ 522(b)&(d).  If allowed, an exemption operates to remove the exempt item from the "property of the estate."  11 U.S.C. § 522(b)(1).  Individual states may "opt out" of the exemptions in § 522, but Washington has not taken such step.  <u>See</u> RCW 6.15.010; RCW 48.18.400.  Thus, in this case, the Bankruptcy Code governs what exemptions are allowed.  <u>See</u> 11 U.S.C. § 522(b)(2); <u>see also</u> <u>In re Yau</u>, 115 B.R. 245, 248 (Bankr. C.D. Cal. 1990).

Debtor asserts that the disability income insurance policy at issue falls within the exemption outlined in § 522(d)(10)(C), which permits an exemption for the "right to receive . . . a disability, illness, or unemployment benefit."  The Trustee contends that, if an exemption is available, the applicable provision is § 522(d)(10)(E), which describes the "right to receive . . . a payment under a stock bonus, pension, profitsharing, annuity, or

ORDER - 7

similar plan or contract on account of . . . disability, . . . *to the extent reasonably necessary for the support of the debtor*." 11 U.S.C. § 522(d)(10)(E) (emphasis added).  For support, the Trustee cites *In re Wegrzyn*, 291 B.R. 2 (Bankr. D. Mass. 2003), which stands for the proposition that § 522(d)(10)(C) relates to government benefits, while § 522(d)(10)(E) governs privately funded or long-term disability benefits.  The Bankruptcy Court, however, did not reach this issue, and whether any exemption would be limited in the manner set forth in § 522(d)(10)(E) is not before the Court on appeal.

The only topic for the Court's review is whether the Bankruptcy Court properly granted summary judgment in favor of the Trustee on the ground that debtor acted in bad faith and was therefore precluded from claiming an exemption as to the disability income insurance policy.  Approximately six months before the Bankruptcy Court ruled on the Trustee's summary judgment motion, it conducted a trial in a different, but related adversary proceeding brought by the United States Trustee (the "UST"), seeking to deny discharge due to concealment of assets and false oaths.  The Bankruptcy Court found that debtor intentionally concealed the disability income insurance policy at issue with the intent to hinder, delay, or defraud his creditors and that he knowingly and fraudulently made false oaths in failing to disclose the policy.  *See* Letter Ruling at 6-7, Appellee's Appendix of Record (docket no. 23 at 173-74).  As a result, the Bankruptcy Court denied discharge pursuant to 11 U.S.C. §§ 727(a)(2)(B) & 727(a)(4)(A).  *Id.*  The Bankruptcy Court's decision has since been affirmed by the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP").  *See* Statement of Decision in Related Proceedings (docket no. 27).

Debtor presents to this Court many of the explanations for failing to timely disclose the disability income insurance policy that the Bankruptcy Court rejected during the course of the adversary proceeding initiated by the UST.  Debtor separately challenged the Bankruptcy Court's factual findings concerning the concealment of assets and rendering of

ORDER - 8

false oaths, and those findings have already been affirmed by the BAP.  Thus, whether those findings are supported by the evidence presented at trial is not before this Court.

The Court, however, must address debtor's contention that those findings were not res judicata in connection with the Trustee's motion to disallow an exemption under § 522(d)(10).  Debtor makes two arguments:  (i) he contends that the standard of proof for bad faith is higher (*i.e.*, clear and convincing evidence) than the standard of proof applied in the adversary proceeding brought by the UST (*i.e.*, preponderance of the evidence); and (ii) he asserts that, because the parties in the respective adversary proceedings were different, a trial should also have been conducted concerning the Trustee's objection to his claim of exemption.

Debtor is incorrect about the standard of proof for bad faith.  The cases he cites concern the standards (i) for sanctioning an attorney, *Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, 406 B.R. 42 (Bankr. S.D. Cal. 2009); (ii) for holding a patent invalid based on fraud, *Carpet Seaming Tape Licensing Corp. v. Best Seam Inc.*, 694 F.2d 570 (9th Cir. 1982); (iii) for dismissing an involuntary petition on the basis of the filing creditors' bad faith, as to which the debtor bears the burden of proof, *In re Molen Drilling Co.*, 68 B.R. 840 (Bankr. D. Mont. 1987); (iv) for a debtor to rebut the presumption of bad faith filing arising under 11 U.S.C. § 362(c)(3)(C), *In re Montoya*, 342 B.R. 312 (Bankr. S.D. Cal. 2006); *In re Castaneda*, 342 B.R. 90 (Bankr. S.D. Cal. 2006); and (v) for precluding a debtor from amending lists or schedules, *Magallanes v. Williams (In re Magallanes)*, 96 B.R. 253 (B.A.P. 9th Cir. 1988); *In re Myatt*, 101 B.R. 197 (Bankr. E.D. Cal. 1989).  None of these cases address the burden of proving bad faith in exemption proceedings.  In contrast, the relevant authorities indicate that the applicable standard of proof is preponderance of the evidence, which provides "a roughly equal allocation of the risk of error between litigants."  *Bauer v. Iannacone (In re Bauer)*, 298 B.R. 353, 356 (B.A.P. 8th Cir. 2003) (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991)); *see also In re Ford*, 492 F.3d 1148, 1155 (10th Cir.

2007) ("For the same reasons set forth by the Supreme Court in <u>Grogan</u>, we conclude a preponderance of the evidence standard governs the evaluation of bad faith in the context of a debtor seeking an exemption. The preponderance of evidence standard strikes a fair balance between the goal of encouraging disclosure and protecting creditors.").

Debtor is also incorrect about the need for identical parties. Res judicata generally refers to the preclusive effect of former litigation. <u>Paine v. Griffin (In re Paine)</u>, 283 B.R. 33, 38 (B.A.P. 9th Cir. 2002). Res judicata has two conceptual categories: (i) claim preclusion; and (ii) issue preclusion, often called "collateral estoppel." <u>Id.</u>; <u>see also</u> <u>Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)</u>, 283 B.R. 549, 555 (B.A.P. 9th Cir. 2002). Both claim and issue preclusion apply in bankruptcy. <u>Paine</u>, 283 B.R. at 39. The key distinction between the two types of preclusion is that matters never litigated may be barred by claim preclusion, while only matters actually litigated may be barred by issue preclusion. <u>Associated Vintage</u>, 283 B.R. at 555. Although claim preclusion requires that the parties be identical or in privity, issue preclusion does not demand a similar showing. This case involves issue preclusion. Issue preclusion is appropriate when (i) the previous and current proceedings involve the same issue; (ii) the issue was actually litigated and determined; (iii) the prior decision is valid and final; and (iv) the determination of the issue was essential to the prior decision. <u>Paine</u>, 283 B.R. at 39. These elements were met in this instance, and the Bankruptcy Court's findings in the UST's adversary proceeding precluded debtor from relitigating the underlying basis for the Trustee's bad faith objection to debtor's claim of exemption as to the disability income insurance policy, <u>i.e.</u>, failure to timely disclose the asset. The Bankruptcy Court's Order of Partial Summary Judgment Regarding Exemptions is therefore AFFIRMED.

**Conclusion**

For the foregoing reasons, Bankruptcy Judge Karen A. Overstreet's Order Approving Compromise of Claim, entered as docket no. 108 in Case No. 08-14147-KAO (Bankr. W.D. Wash. Sep. 4, 2009), and Order of Partial Summary Judgment Regarding Exemptions, entered as docket no. 45 in Adversary Proceeding No. 08-1232-KAO (Bankr. W.D. Wash. Sep. 4, 2009), are both AFFIRMED.  Debtor's Emergency Motion for Stay Pending Appeal, docket no. 5, and debtor's Motion for Leave to Appeal Denial of Summary Judgment, docket no. 20, are STRICKEN as moot.  The stay of disbursement of the approximately $52,000 held in the bankruptcy estate as a result of the settlement between the Trustee and Standard, imposed by Minute Order dated December 10, 2009, docket no. 13, is hereby LIFTED, and such funds may be disbursed as the Bankruptcy Court directs.  The Clerk is directed to enter judgment consistent with this Order, to CLOSE this case, and to send a copy of this Order to all counsel of record, to debtor pro se, and to Bankruptcy Judge Karen A. Overstreet.

IT IS SO ORDERED.

DATED this 30th day of July, 2010.

Thomas S. Zilly
United States District Judge